**SHARP BROS. CONTRACTING COMPANY AND SANDERS COMPANY, INC., a joint venture, Plaintiff–Appellee and Cross–Appellant,**

v.

**WESTVACO CORPORATION, Defendant–Appellant and Cross–Appellee and Third–Party Plaintiff–Appellant,**

v.

**AMERICAN STEEL AND IRON WORKS, INC., American Painting and Sandblasting, Inc., and Carboline Company, Third–Party Defendants–Appellees.**

No. 92CA1772.

Colorado Court of Appeals, Div. III.

Jan. 13, 1994.

Rehearing Denied Feb. 10, 1994.

Certiorari Denied Aug. 15, 1994.

Niewald, Waldeck & Brown, Stephen J. Dennis, Kevin E. Glynn, Kansas City, MO, Dickinson, Everstine & Prud'homme, Michelle R. Prud'Homme, Denver, for plaintiff-appellee and cross-appellant.

Seigfreid, Bingham, Levy, Selzer & Gee, P.C., Duane J. Fox, Paul G. Schepers, Kansas City, MO, Calkins, Kramer, Grimshaw & Harring, Edward J. Blieszner, Denver, for defendant-appellant and cross-appellee and third-party plaintiff-appellant.

Hall & Evans, L.L.C., Alan Epstein, Paul R. Franke III, Denver, for third-party defendant-appellee American Steel and Iron Works, Inc.

Wood, Ris & Hames, P.C., Colin C. Campbell, Katherine A. Pettersen, Denver, for third-party defendant-appellee American Painting and Sandblasting, Inc.

Cooper & Kelley, P.C., Bernard B. Sapp, Denver, for third-party defendant-appellee Carboline Co.

Opinion by Judge HUME.

Defendant, Westvaco Corporation, appeals from a judgment entered upon a jury verdict awarding damages for breach of a construction contract with plaintiff, Sharp Bros. Contracting Company and Sanders Company, Inc., a joint venture. Defendant also appeals the trial court's orders dismissing its third-party claims against defendants American Steel and Iron Works, Inc. (American Steel), Carboline Company (Carboline), and American Painting and Sandblasting, Inc. (Ameri-

can Painting). Plaintiff cross-appeals the trial court's order denying its motion for hearing on a request for attorney fees. We affirm the judgment and orders entered by the trial court.

In late 1980, plaintiff contracted with the City and County of Denver to serve as general contractor in the construction of a potable water reuse demonstration plant for the City. Plaintiff subcontracted with defendant to furnish and install a carbon regeneration system for the plant. The subcontract agreement expressly provided that Missouri law was to govern its interpretation.

Defendant entered a sub-subcontract with American Steel for construction and installation of two carbon storage tanks required by the regeneration system. American Steel, in turn, contracted with Carboline to provide liners for the tanks and with American Painting for installing the tanks on the site.

The tank liners were rejected after delivery to the site, because they did not meet contract specifications. While American Painting was using a highly flammable chemical to remove defective tank linings, a fire and explosion occurred, damaging the tank and surrounding areas of the plant and delaying completion of the project.

Plaintiff first sued defendant in the U.S. District Court in Missouri for negligence, indemnity, and contract damages suffered as a result of the fire. Defendant timely asserted third-party claims against American Steel, American Painting, and Carboline (the sub-subcontractors) for contribution and indemnity. The action was transferred to the U.S. District Court in Colorado. Thereafter plaintiff added direct claims against the sub-subcontractors, which resulted in the dismissal of the action without prejudice for lack of subject matter jurisdiction because plaintiff and Carboline were citizens of the same state. Plaintiff attempted to save the action by moving to dismiss its claims against Carboline, but the court concluded that Carboline was an indispensable party and denied the motion.

Plaintiff then refiled its complaint in federal court without asserting a claim against Carboline so that the action would meet diversity requirements. However, the U.S. District Court again dismissed the action without prejudice because it deemed Carboline to be an indispensable party to the action.

Plaintiff then commenced this action asserting claims against defendant and the sub-subcontractors in the trial court. The action was filed more than four years after the fire and six days before the expiration of the period permitted under the Colorado remedial revival statute, § 13–80–111, C.R.S. (1987 Repl.Vol. 6A). Plaintiff's complaint was served on all defendants approximately five weeks after that period expired. Shortly after being served with this complaint, defendant filed cross-claims against each of the three sub-subcontractors.

The court dismissed all but one of plaintiff's claims against defendant and both plaintiff's and defendant's claims against the sub-subcontractors because the statute of limitations had expired.

On appeal, a division of this court upheld the dismissal of plaintiff's claims against the sub-subcontractors but concluded that plaintiff had timely filed its claims against defendant within the period provided by the remedial revival statute. *Sharp Bros. Contracting Co. v. Westvaco Corp.*, 817 P.2d 547 (Colo.App.1991).

In a related appeal decided the same date, that division also affirmed the trial court's summary judgment dismissing as time barred defendant's third-party claims against the sub-subcontractors. *Westvaco Corp. v. American Steel & Iron Works, Inc.*, (Colo. App. No. 89CA1440, March 14, 1991) (not selected for official publication).

On remand, defendant sought to re-institute as third-party claims the cross-claims it had previously asserted against the sub-subcontractors. However, the trial court dismissed the third-party claims as barred by the doctrines of *res judicata*, law of the case, and the statute of limitations. The matter was ultimately tried solely upon plaintiff's claim for defendant's breach of performance under the parties' contract and its indemnity provision and defendant's counterclaim for

moneys allegedly owed to it under the contract.

The jury found in favor of plaintiff on both the claim and counterclaim. The trial court added prejudgment interest to the jury's damage award and entered judgment accordingly.

## I.

Defendant first contends that the federal court's determination that Carboline was an indispensable party is *res judicata* and that, therefore, the state court did not have jurisdiction to proceed in this action. We disagree.

■ The doctrine of *res judicata* encompasses both claim preclusion, which is true *res judicata*, and issue preclusion, more commonly called collateral estoppel.

■ *Res judicata* bars a second action on a claim previously litigated if there is a final judgment and identity of subject matter, claims for relief, and parties to the action. Collateral estoppel bars relitigation of an issue if it is identical to an issue actually and necessarily adjudicated at a prior proceeding; if the party against whom estoppel is asserted was a party or is in privity with a party in the prior proceeding; if there was a final judgment; and if the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Denver v. Block 173 Associates*, 814 P.2d 824 (Colo.1991).

■ A judgment based on procedural rather than substantive grounds is not a final judgment on the merits and does not give rise to application of the doctrine of *res judicata* or collateral estoppel. *See Platte River Drive Joint Venture v. Vasquez*, 860 P.2d 599 (Colo.App.1993). Further, dismissal without prejudice for lack of jurisdiction is not an adjudication on the merits. *Dash v. Rubey*, 144 Colo. 481, 357 P.2d 81 (1960).

■ Here, the federal court twice dismissed the actions without prejudice for lack of jurisdiction based upon a finding that Carboline was an indispensable party whose joinder destroyed diversity of citizenship. The federal court's determination of subject matter jurisdiction was not an adjudication on the merits. Thus, we conclude that the trial court did not err in determining that the federal court orders of dismissal without prejudice did not conclusively determine whether the sub-subcontractors were indispensable parties.

Alternatively, defendant argues that the trial court erred in determining that the sub-subcontractors were not indispensable parties and in permitting the action to proceed without requiring their joinder. We disagree.

■ The test for whether a party is indispensable is whether the absent person's interest in the subject matter of the litigation is such that "no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the right of such absent person." *Woodco v. Lindahl*, 152 Colo. 49, 54–55, 380 P.2d 234, 238 (1963).

■ Whether a party is indispensable is a mixed question of law and fact. *Prutch Bros. Television & Music Systems, Inc. v. Crow Watson No. 8*, 732 P.2d 241 (Colo.App. 1986).

The factors which the trial court must consider in determining whether an action should be dismissed for lack of joinder or whether the action should proceed without the absent party are: 1) the extent to which a judgment rendered in the person's absence may be prejudicial either to the absent entities or to those already parties; 2) the extent to which the judgment can be shaped to reduce or avoid any prejudice resulting from nonjoinder; 3) whether a judgment without the absent person would be adequate; and 4) whether the plaintiff would have an adequate remedy if the action is dismissed. C.R.C.P. 19(b).

■ Here, only claims arising from the contract between plaintiff and defendant were presented to the jury. And, although defendant had entered into subcontracts with American Steel, American Painting, and Carboline, the only parties to the contract here in question were plaintiff and defendant. Defendant, having previously sought to as-

sert them in the federal cases, was aware of the existence of its various claims against the sub-subcontractors, and any prejudice resulting from its failure to perfect the filing of such claims in a timely fashion cannot be shifted either to plaintiff or to the sub-sub-contractors.

## II.

Defendant next contends that the trial court should have invoked an equitable tolling of the applicable statute of limitations on its third-party claims because it was served with the state action after the statute of limitations and remedial revival period had expired. We disagree.

Once the statute of limitations is raised as a defense the burden of proof shifts to the party asserting that its application should be equitably tolled. *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850 (Colo.1992).

Generally, in order for a statute of limitations to be tolled because of equitable considerations, the party asserting the statute as a defense must be the party engaging in conduct that would make the application of the statute inequitable. *Strader v. Beneficial Finance Co.*, 191 Colo. 206, 551 P.2d 720 (1976); *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12 (Colo.App.1991).

Here, defendant does not suggest that American Steel, American Painting, or Carboline had engaged in any conduct which adversely affected the filing of defendant's claims, and thus, the trial court did not err in refusing to apply the doctrine of equitable tolling in this case.

## III.

Defendant next contends that there was insufficient evidence to support the jury's finding that the injury it suffered was foreseeable when the parties entered into the contract. We disagree.

Under Missouri law, unless the contract specifically excludes such recovery, a plaintiff is entitled to all damages that are the proximate and natural consequences of a breach thereof. *Liberty Financial Management Corp. v. Beneficial Data Corp.*, 670 S.W.2d 40 (Mo.App.1984).

A determination of what is foreseeable begins with what the parties contemplated as possible consequences of a breach when they entered into the contract. If both parties are engaged in the same line of business, the consequences generally encountered in that business may be inferred as being foreseeable. *See Liberty Financial Management Corp. v. Beneficial Data Corp., supra.*

Here, the evidence sufficiently indicates it to be foreseeable that, if defendant's performance of the contract was defective, it would be contractually obligated to remedy the defect. It was further foreseeable that defendant would be held liable for consequences which flowed from that correction and that it would be liable to plaintiff under the broad contractual indemnification clause for any losses suffered as a result of defendant's breach, actions, or inaction.

Accordingly, we perceive no error in the court's submission of the issue to the jury or in its resolution by that body.

## IV.

### A.

Defendant next contends that plaintiff failed to prove that it breached the indemnity provision of the contract because it was at least equally likely that plaintiff's own negligence caused the damages. We disagree.

Defendant contends that plaintiff's knowledge that a highly flammable chemical was being used in the tanks to remove the liners resulted in active negligence when its employees operated a grinder in the vicinity of the tank. Therefore, it argues, as a matter of law, plaintiff was barred from recovering under the indemnity agreement.

However, the evidence showed that plaintiff's activities were not the only possible cause of the fire, and no expert witness was able to conclude with certainty which of the possible causes actually started the fire.

## B.

■ Defendant also asserts that the jury should have been instructed that if plaintiff was found to be the party whose negligence had started the fire it could not recover under the indemnity agreement. It asserts that a new trial is warranted on this basis. Again, we disagree.

An instruction given by the court provided that:

> In order for the plaintiff, Sharp/Sanders, to recover from the defendant, Westvaco, on its claim of breach of express contract, you must find both of the following have been proved:
>
> 1. The defendant entered into a contract with the plaintiff to perform certain work; and
>
> 2. The defendant failed to perform the work as required by the contract or failed to indemnify plaintiff from damages as a result of the fire....

Defendant objected to this instruction. However, rather than amending the language of the instruction, the trial court told defense counsel that he could address the negligence issue in his closing argument. It appears from the record that since the contract addressed defendant's negligence, active or inactive, the trial court concluded that the language of the contract would provide any detail missing in the jury instruction.

In addition, another jury instruction given by the court adequately addressed the issue as to whether defendant's breach, or some other conduct, caused the damage in question. That instruction stated:

> To award actual damages [for breach of contract] you must find ... that the plaintiff incurred actual damages *as a result of the breach,* and the amount thereof.
>
> To the extent that actual damages have been proved by the evidence, you shall award as actual damages:
>
> . . . .
>
> [A]ny damages sustained by the plaintiff as a result of the time to repair the property damaged by the fire; provided, as to these damages, you not only find by a prepon-

derance of the evidence that they were a natural and probable consequence of the claimed breach of the contract by the defendant ... but also that, at the time the parties entered into the contract, the defendant reasonably could have anticipated ... that these damages would probably be incurred by the plaintiff.... (emphasis added)

Thus, in reviewing all of the evidence and instructions as a whole, we conclude that the instructions adequately addressed the issue as to whether defendant's breach of contract or some other conduct actually caused the injuries and damages complained of. We are also satisfied that the evidence was sufficient to support the jury's determination of that issue.

## V.

■ Defendant next contends that the trial court erred in applying the contract indemnity language to permit an award of damages suffered directly by plaintiff. We disagree.

Here, the evidence reflects that the damages awarded were to satisfy claims that the City held against plaintiff as general contractor. Thus, even if a third-party claim is required, it existed here, and the damages awarded by the jury were proper under the indemnity contract in question.

## VI.

Defendant next contends that the trial court erred in denying its motion for judgment notwithstanding the verdict on its counterclaim for the outstanding balance under its subcontract with plaintiff. We disagree.

■ Judgment notwithstanding the verdict is justified only when evidence is so overwhelmingly in favor of the moving party that no other reasonable conclusion could be reached. *Wesley v. United Services Automobile Ass'n,* 694 P.2d 855 (Colo.App.1984). Such relief is inappropriate if the trier of fact could rationally have drawn more than one inference from the evidence. *Thorpe v. Durango School District No. 9–R,* 41 Colo.App. 473, 591 P.2d 1329 (1978).

Here, plaintiff submitted evidence that showed an outstanding balance owed defendant, debit memoranda deducting amounts from that balance, and amounts paid directly by the owner to defendant. Defendant introduced testimony that a balance was owed, but little documentary evidence to support its claim. This conflicting evidence was properly submitted to the jury for resolution of defendant's claim, and we perceive no error in the court's denial of defendant's motion for judgment notwithstanding the verdict.

### VII.

Defendant next contends that the trial court erred in awarding prejudgment interest because plaintiff is not entitled to such interest under Missouri law. We disagree.

Colorado follows the minority rule that moratory prejudgment interest is governed by the laws of the forum state rather than the law of the state designated by a contract. *Prospero Associates v. Redactron Corp.*, 682 P.2d 1193 (Colo.App.1983)

Defendant alternatively contends that prejudgment interest cannot be awarded on an unliquidated amount. However, such interest may be awarded regardless of whether the claim is liquidated or unliquidated. *Hott v. Tillotson–Lewis Construction Co.*, 682 P.2d 1220 (Colo.App.1983).

Accordingly, we perceive no error.

### VIII.

In its cross-appeal, plaintiff contends that the trial court abused its discretion in failing to hold a hearing before denying it attorney fees. We disagree.

Generally, attorney fees incurred in enforcing an indemnity provision are not recoverable under Missouri law unless the contract specifically provides for recovery in such a context. *Missouri Pacific R.R. Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898 (Mo.App.1975).

Here, the contract does not specifically provide for indemnification of fees ex-

pended for enforcement of the indemnification clause as distinguished from fees expended in defending against a claim that gives rise to a right of indemnification.

Since plaintiff relied solely on the indemnity contract to justify its motion for attorney fees, we need not address whether the trial court erred by not holding a hearing on the issue, and we perceive no error in the denial of such fees.

The judgment and orders are affirmed.

METZGER and PLANK, JJ., concur.